UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

|  |  |
|---|---|
| DAMON VICTOR CRIST,<br><br>             Plaintiff,<br><br>   v.<br><br>ADA COUNTY; SGT. FERGUSON #1; DEPUTY RAUBENHEIMER; DEPUTY COWLES; SGT. FERGUSON #2; DEPUTY MILLER; DEPUTY BARBER; and DEPUTY FRANKS, in their individual and official capacities,<br><br>             Defendants. | Case No. 1:24-cv-00180-DKG<br><br>**MEMORANDUM DECISION AND ORDER** |

      Plaintiff, a pretrial detainee being held in the Ada County Jail, is proceeding pro se and in forma pauperis in this civil rights action. Plaintiff has been allowed to proceed on claims that the individual Defendants retaliated against Plaintiff for his use of the jail grievance process and that Defendant Ada County has a policy, custom, or practice of punishing inmates for using disrespectful or profane language in grievances. *See Init. Rev. Order*, Dkt. 15, at 8–9. Plaintiff has also been allowed to proceed on his state law claims of assault, battery, and intentional infliction of emotional distress, based on a deputy's assaulting Plaintiff in retaliation for using the grievance process. *Id.* at 9.

      Pending before the Court are several motions filed by Plaintiff: (1) a motion to supplement the Amended Complaint (Dkt. 36); (2) a motion for an order requiring Ada

County to provide Plaintiff with two copies of every document he files with the Court in this case—one for opposing counsel and one for Plaintiff's records—as well as whatever postage is required for sending each document to opposing counsel and to the Court (Dkt. 26); and (3) a motion requesting preliminary injunctive relief (Dkt. 27).

All parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. *See* Dkt. 35. Having carefully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record and that oral argument is unnecessary. Accordingly, because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter will be decided on the record before this Court without oral argument. D. Idaho Loc. Civ. R. 7.1.

For the reasons that follow, Petitioner's motion to supplement will be granted, but his requests for unlimited supplies and for preliminary injunctive relief will be denied.

1.  **Motion to Supplement the Amended Complaint by Amending One Page and One Claim**

    Plaintiff seeks to substitute a single page in the Amended Complaint. This Motion will be granted.

2.  **Motion Requesting Court Order to Compel Defendant Ada County to Provide Legal Resources**

    Plaintiff states that Ada County permits only $10.00 per month in indigent legal supplies, such as copies and postage. Plaintiff anticipates that he will need more than this

amount to litigate this case and demands the jail provide him with two copies of each document he files and postage for those filings.

Plaintiff's belief as to what his future litigation activities will require does not justify the sweeping, unlimited order he seeks. It may be that Plaintiff will need less than $10.00 per month for copies and postage to pursue his claims. Also, it is premature at this time simply to assume that Ada County will not permit him to exceed that amount when required.

The Court also notes that Plaintiff is not permitted to keep an unlimited volume of legal materials—including copies of filed documents—in his cell. A jail may impose reasonable limits on the amount of property inmates may keep in their cells. *See Turner v. Safley*, 482 U.S. 78, 89 (1987) ("[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.").

Plaintiff is not entitled to a broad, unlimited injunction requiring the jail to provide whatever supplies Plaintiff deems necessary to litigate this case. Therefore, Plaintiff's motion will be denied at this time.

Indigent inmates are, of course, entitled to supplies needed to assert their claims. *See Lewis v. Casey*, 518 U.S. 343, 356 (1996) (stating that inmates' right to access the courts guarantees "the capability of bringing contemplated challenges to sentences or conditions of confinement before the courts"); *but see id*. at 355, 360 (stating that inmates are *not* guaranteed the right to "be able to conduct generalized research" or "to transform themselves into litigating engines"). If, at any future point in this litigation, Plaintiff is

MEMORANDUM DECISION AND ORDER - 3

actually denied copies or postage for documents submitted to opposing counsel in a manner that implicates his right to access the courts, he may renew his request for an order directing Ada County to provide those copies or postage.

**3.      Emergency Motion for Temporary Restraining Order Pursuant to Rule 65(b)**

Plaintiff seeks preliminary injunctive relief on his § 1983 retaliation claims. He asks for an order prohibiting Ada County from disciplining him for his use of the grievance process—more specifically, from enforcing its policies of punishing inmates for (1) filing multiple grievances on a similar subject, and (2) using disrespectful or profane language in grievances. Dkt. 33 at 4. He also asks the Court to enjoin Ada County from "institutionally prosecuting any written grievance not properly classified [as] 'frivolous,' or "totally lacking merit." *Id*. at 5.

### A.      *Standards of Law Governing Temporary Restraining Orders and Preliminary Injunctions*

A party may obtain injunctive relief prior to final judgment in certain limited circumstances. *See* Fed. R. Civ. P. 65. In considering whether to issue a temporary restraining order ("TRO") or a preliminary injunction, a district court "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Amoco Production Co. v. Gambell*, 480 U.S. 531, 542 (1987). The main differences between a TRO and a preliminary injunction are that a TRO (1) can be issued without notice to the non-moving party and (2) is limited to 14 days. Fed. R. Civ. P. 65(b). A preliminary injunction, on the other hand, may be issued only on notice to the non-moving party but may extend through trial. Fed. R. Civ. P.

65(a). Though Plaintiff styles his Motion as one seeking a TRO, the Motion is more appropriately considered as one seeking a preliminary injunction.

Although a request for a preliminary injunction places a court in the position of preliminarily reviewing the merits of the plaintiff's claims, a preliminary injunction is not for the purpose of adjudicating the merits of those claims. Rather, it is "a device for preserving the status quo and preventing the irreparable loss of rights before judgment." *Sierra On-Line v. Phoenix Software*, 739 F.2d 1415, 1422 (9th Cir. 1984).

To be entitled to preliminary injunctive relief, the moving party must establish that (1) the movant will likely prevail on the merits of his claims; (2) the movant will suffer irreparable injury if preliminary injunctive relief is denied; (3) the balance of potential harm favors the movant; and (4) the public interest favors granting relief. *Winter v. Natural Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[B]ecause a preliminary injunction is an extraordinary remedy" and is "never awarded as of right," *id*. at 24, the moving party's "right to relief must be clear and unequivocal," *Dominion Video Satellite v. Echostar Satellite Corp.*, 269 F.3d 1149, 1154 (10th Cir. 2001).

In deciding whether to issue a preliminary injunction, the Court "is not bound to decide doubtful and difficult questions of law or disputed questions of fact." *Internat'l Molders' and Allied Workers' Local Union No. 164 v. Nelson*, 799 F.2d 547, 551 (9th Cir. 1986) (quoting *Dymo Industries, Inc. v. Tapewriter, Inc.*, 326 F.2d 141, 143 (9th Cir. 1964)). A court need not hold a hearing on a motion for a preliminary injunction "when the movant has not presented a colorable factual basis to support the claim on the merits

or the contention of irreparable harm." *Bradley v. Pittsburgh Bd. of Educ.*, 910 F.2d 1172, 1176 (3rd Cir. 1990).

### B. The Motion for Preliminary Injunctive Relief Will Be Denied

After carefully considering the *Winter* factors, the Court concludes that Plaintiff is not entitled to preliminary injunctive relief on his retaliation claims.

The "most important" factor in the preliminary injunction inquiry is Plaintiff's likelihood of success on the merits. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (en banc). The plaintiff's likelihood of success "is a threshold inquiry," meaning that "when a plaintiff has failed to show [a] likelihood of success on the merits," a district court does not need to consider the other three *Winter* factors. *Id.* (internal quotation marks omitted).

#### i. Standards of Law Governing Plaintiff's Retaliation Claims

An inmate asserting a retaliation claim must show the following: "(1) … that a state actor took some adverse action against the inmate (2) because of (3) that prisoner's protected conduct … that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) [that] the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote omitted). Using a jail grievance process—and, indeed, using disrespectful language within a grievance—is protected activity under the First Amendment. *Hines v. Gomez,* 108 F.3d 265, 267 (9th Cir. 1997); *Bradley v. Hall*, 64 F.3d 1276, 1281–82 (9th Cir.1995), *abrogated on other grounds by Shaw v. Murphy*, 532 U.S. 223 (2001).

Plaintiff's retaliation claims are subject to the Supreme Court's analysis set forth in *Turner v. Safley*, 482 U.S. 78 (1987); *see also Bull v. City and County of San Francisco,* 595 F.3d 964, 971 (9th Cir. 2010) (en banc) (applying *Turner*, which arose in the context of claims asserted by convicted prisoners, to claims asserted by pretrial detainees). In *Turner*, the Court examined a free speech issue in the context of prison officials prohibiting correspondence between inmates residing at different state institutions and held that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. at 89.

The Court identified four factors to consider when determining whether a regulation is valid: (1) whether there is a "rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) whether "there are alternative means of exercising the right that remain open to prison inmates"; (3) what "impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; and (4) whether "ready alternatives" exist. 482 U.S. at 89–90.

The *Turner* analysis appropriately allows prison and jail officials substantial leeway in the management of their institutions because "[s]ubjecting the day-to-day judgments of prison [or jail] officials to an inflexible strict scrutiny analysis would seriously hamper their ability to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration." *Id.* at 89. Federal courts must apply the *Turner* test so as to "accord great deference to prison officials'

assessments of their interests." *Michenfelder v. Sumner*, 860 F.2d 328, 331 (9th Cir. 1988).

> ii. <u>Plaintiff Is Not Likely to Succeed on the Merits of His Retaliation Claims</u>

As explained above, Plaintiff has been permitted to proceed on, among other claims, his retaliation claims based on being disciplined (physically and with loss of privileges) for filing grievances in general and for using disrespectful and profane language in a grievance. The Amended Complaint asserted plausible claims because the allegations therein gave rise to a reasonable inference of the following:

> The discipline that Plaintiff received, including isolation and restrictive housing and Deputy Raubenheimer's physical attack, appear sufficient to chill a person of ordinary firmness from utilizing the grievance process. The Amended Complaint offers much more than bare allegations of a retaliatory motive—indeed, several deputies explicitly cited Plaintiff's grievances as grounds for discipline. The Amended Complaint also states a plausible policy-or-practice claim against Ada County. That policy allegedly expressly allows jail officials to punish inmates for using disrespectful or profane language in grievances, which is not permitted under Ninth Circuit precedent.

*Init. Rev. Order*, Dkt. 15, at 8–9 (internal citation omitted).

The evidence Defendants have now submitted implicates two aspects of the jail grievance policy—permitting officials to discipline inmates (1) for filing multiple grievances on the same issue, *not* simply for filing a grievance in general, and (2) for using disrespectful or profane language in a grievance. As explained below, the evidence tends to suggest that Plaintiff was not, in fact, disciplined for filing grievances in general or for using disrespectful and profane language. Instead, the evidence suggests Plaintiff

MEMORANDUM DECISION AND ORDER - 8

was disciplined only for violating the jail's policy against submitting multiple grievances on the same issue. *See generally Exhibits to Decl. of Shem McCulloch*, Dkt. 32-2.

Over four months, Plaintiff submitted four grievances complaining about the shoes issued by the jail. On June 17, 2024, Plaintiff submitted a grievance entitled, "Grieving Dangerous Shoes." Plaintiff claimed the shoes were dangerous when the tread wears out, that inmates were "slipping like crazy with the smallest bit of water on the floor," and that the tread did not last long. *Id.*, *Ex. A.*, Dkt. 32-2 at 14. Plaintiff stated he caught himself falling many times and would "be requesting new shoes [the] second the raised tread is reduced." *Id.*

That same day, Deputy Jason Sanchez spoke to Plaintiff in person and told him a new pair of shoes would be issued the next day. Plaintiff appealed. On appeal, jail employee Michelle Hodges informed Plaintiff that the most appropriate way to address the problem was for Plaintiff to request new shoes as they wore out: "Mr. Crist, Thank you for the information regarding the shoes. I understand Deputy Sanchez did get you a new pair of shoes. Please feel free to request a new pair of shoes as yours wear out, we are happy to replace them." *Id.*

Despite receiving this new pair of shoes, Plaintiff filed another grievance on June 26, 2024, only nine days after the first grievance. The second grievance was again entitled, "Grieving Dangerous Shoes." Plaintiff stated:

> The foam shoes … are dangerous as heck the second the shoes even have a little wear on them and we walk on even a tiny bit of water. [Another inmate] fell tonight in dorm six at about 5:30 pm and almost really injured himself. We are

MEMORANDUM DECISION AND ORDER - 9

> slipping and falling all over the place and all deputies knew this to be true. Please get us better shoes!!!

*Id*. at 15. Deputy Austin Knight responded, again informing Plaintiff that the appropriate means of addressing Plaintiff's concern was simply for him to request new shoes as needed:

> Thank you for bringing this to our attention. I have notified my supervisor regarding your concern. If you feel you need a replacement pair of shoes due to them being worn out, please submit a request on the kiosk with your appropriate shoe size. You will then be provided with a replacement pair of shoes.

Plaintiff appealed. The appellate reviewer, K. Ferguson, again noted Plaintiff's concern about the shoes and confirmed the proper procedure to obtain new shoes—simply to request them. Ferguson responded, "[a]s Deputy Knight stated, please notify your housing deputy if you need a new pair of shoes." *Id*.

Approximately two weeks later, on July 11, 2024, Plaintiff submitted a third grievance entitled "Grieving Dangerous Shoes," in which he complained that he had been denied another new pair of shoes: "I'm grieving the foam shoes issued by the jail. These shoes are dangerous and I have raised my concerns repeatedly. I have been informed that, within reason, any time I obtain wear to the point of 'shoes now being dangerous' I can request and obtain new shoes. I did so last night and was denied." *Id*. at 18.

The staff member who had denied Plaintiff's request for new shoes initially responded to the grievance, stating that he had inspected Plaintiff's shoes and that the shoes were in reasonably good condition. Despite this initial denial of Plaintiff's request, he was again issued new shoes no more than three days later, as noted by the appellate

MEMORANDUM DECISION AND ORDER - 10

grievance reviewer. *Id*. This was the third pair of new shoes the jail issued to Plaintiff in approximately one month.

Three months later, on October 11, 2024, Plaintiff submitted a fourth grievance entitled "Grieving Dangerous Shoes"—the grievance that subjected him to discipline. He complained as follows:

> I had hoped by now [three months after the third grievance was submitted] this jail would have replaced these horrifically dangerous black shoes. 30 to 40 inmates around the jail have slipped and fallen on the smallest amounts of water and really hurt themselves…as you already know!!! I slipped and fell and still this trash medical department won't grant me a surgery this institution CREATED! Since dangerous conditions, of which the jail has LONG BEEN ON NOTICE about, are being forced upon us and when injuries are created because of those conditions, we are being left to suffer surgical injuries because trash ass medical will not help us, I'm planning to file a class action with my attornies [sic]. There are multiple such filings being considered because of hopeless catch-22 administration. Discontinue the use of these very dangerous shoes…WE KEEP SLIPPING on almost just a skiff of water. Fix this problem!!!!!!!!!!

*Id*. at 24 (ellipses in original).

Deputy Ivie responded:

> Mr. Crist, thank you for voicing your concerns about the jail issued shoes. I have brought this issue up to my supervisor regarding your concern. If your current pair of shoes are in poor condition, please notify your housing deputy so they can take the proper steps to acquire new ones. *Additionally, I would recommend to you that you refrain from using profanity when using the request/grievance process*. If you have any questions, please do not hesitate to ask your housing deputy. Thank-you.

*Id*. at 25 (emphasis added).

MEMORANDUM DECISION AND ORDER - 11

Plaintiff appealed. The appellate reviewer, Darryl Meacham, informed Plaintiff he was abusing the grievance process by submitting multiple grievances on the same issue: "Once a grievance/request has been answered and appealed (if appropriate), *repeatedly grieving/requesting the same issue constitutes an abuse of the process and can result in disciplinary action*." *Id*. at 25 (emphasis added). Meacham also informed Plaintiff that, according to jail policy, Plaintiff was "expected to use respectful language to express grievances or requests and when interacting with others. *Grievances that contain vulgar words or otherwise insolent language will be answered but may subject you to disciplinary action*." *Id*. (emphasis added). Meacham referred the matter to Plaintiff's housing deputy to determine whether "to write [Plaintiff] up for these violations of the inmate handbook." *Id*. Meacham also reiterated that Plaintiff was able to receive new shoes upon request.

Deputy Tamondong investigated and recommended that Plaintiff be disciplined for a "Class Two Violation" of "abusing the grievance process." *Id*. at 27. Tamondong recommended seven days' loss of privileges. *Id*. at 28. Tamondong's report cited both of the jail policies at issue: prohibiting multiple grievances on the same issue and disrespectful or profane language in grievances. *Id*.

Though Tamondong's recommendation to discipline Plaintiff with seven days' loss of privileges was approved, the reviewing authority issued the violation only on the grounds that Plaintiff had filed multiple grievances on the same issue—*not* that he used disrespectful or profane language in a grievance:

MEMORANDUM DECISION AND ORDER - 12

> *[Y]ou were repeatedly grieving the same issue* per the inmate handbook and the interpretation of the grievance process that you have is not the same interpretation as to what is explained in the inmate handbook or how the grievance process is to be used.
>
> Below is what the inmate handbook says.
>
>> Abuse of the Grievance/Request System "Abuse of the grievance/request system is a Class II violation. *Once a grievance/request has been answered and appealed (if appropriate), repeatedly grieving/requesting the same issue constitutes an abuse of the process and can result in disciplinary action*."
>
> I was able to review all staff responses on the (4) black foam grievances you have submitted and/or appealed. I find staff response and administration response to be correct. Staff has been accommodating to replace any worn-out foam black shoes when requested to do so.
>
> I reviewed the incident report and I do find some evidence to uphold some of the facts defined in this report. *I do find you did misuse the grievance system by repeatedly grieving the same issue*. Your discipline is upheld to seven days loss of all privileges.

*Id*. at 29 (emphasis added).

Plaintiff has not submitted any admissible evidence calling Defendants' evidence into question. Accordingly, Plaintiff is not likely to succeed on his claim that he was disciplined for filing a grievance in general or for the language he used in the grievance. Rather, the evidence tends to suggest he was disciplined solely for filing multiple grievances complaining about the same issue—his hatred of the jail-issued shoes.

The next question is this: Is Plaintiff likely to succeed on his claim that he was unlawfully disciplined in retaliation for submitting multiple grievances on the same

MEMORANDUM DECISION AND ORDER - 13

issue? This question requires consideration of the *Turner* factors to determine whether Plaintiff can likely show that the repeated-grievance policy is not reasonably related to a legitimate governmental purpose.

The first *Turner* factor—whether there is a rational connection between the repeated-grievance policy and a legitimate governmental interest—weighs in favor of Defendants. The Court agrees with Defendants that "a jail has a legitimate interest in managing staff resources, including ensuring that staff is not overly burdened and required to take too much time away from their primary function—assuring the safety of those in the jail—to respond to grievances." Dkt. 32 at 7. A policy keeping inmates for grieving an issue that has already been addressed appears rationally related to that legitimate institutional interest.

As for the second *Turner* factor, Defendants' responses to Plaintiff's grievances identified an alternative means for Plaintiff to raise his concerns about the jail shoes. Plaintiff was repeatedly informed that he would receive new shoes, by simply requesting them from a housing deputy via kiosk, as the shoes wore out. And Plaintiff did so numerous times, with only one of his requests initially being denied, but granted three days later. Thus, the second *Turner* factor also falls in Defendants' favor.

The third *Turner* factor requires the Court to consider the impact that permitting repeated grievances on the same issue would have on deputies and other inmates, as well as "the allocation of [jail] resources generally." *Turner*, 482 U.S. at 90. This factor weighs against Plaintiff because permitting unlimited grievances on the same issue could easily overload jail staff with grievances that had already been considered on their merits,

MEMORANDUM DECISION AND ORDER - 14

requiring staff to spend inordinate amounts of time away from their primary duty of ensuring inmate safety.

Finally, the fourth *Turner* factor also weighs against Plaintiff, as he has not identified a readily available alternative policy that would keep the number of pending grievances at a reasonable level. Once again, permitting unlimited grievances on issues that have already been addressed could quickly overload the jail's resources.

Plaintiff contends that his grievances did not actually raise the same issue because, for purposes of administrative exhaustion, an inmate must separately exhaust each event of which he complains. *See* Dkt. 33 at 9 ("[E]vents and people days removed, into months separated are never exhausted by a grievance that does not cover issues in the future. And, the content within each grievance evolves with changing events, plus, those specific events demand exhaustion for litigation purposes."). This argument may have merit. However, Plaintiff's grievances about "dangerous shoes" were primarily general complaints about the shoes, and he repeated the same concerns multiple times. It might have been reasonable for the officials reviewing the grievances to believe that the grievances raised the same issue. Plaintiff's argument on this point is insufficient to meet his burden of showing "clear and unequivocal" entitlement to a preliminary injunction. *Dominion Video Satellite*, 269 F.3d at 1154.

For the foregoing reasons, the Court concludes that Plaintiff is not likely to succeed the merits of his retaliation claims. As a result, the Court need not consider the other three *Winter* factors. *See Garcia*, 786 F.3d at 740. Accordingly, Plaintiff is not entitled to preliminary injunctive relief.

MEMORANDUM DECISION AND ORDER - 15

**ORDER**

**IT IS ORDERED:**

1. Plaintiff's Motion to Supplement the Amended Complaint by Amending One Page and One Claim (Dkt. 36) is GRANTED.

2. Plaintiff's Motion Requesting Court Order to Compel Defendant Ada County to Provide Legal Resources (Dkt. 26) is DENIED.

3. Plaintiff's Emergency Motion for Temporary Restraining Order (Dkt. 27) is DENIED.

DATED: December 19, 2024

_____
Honorable Debora K. Grasham
United States Magistrate Judge